UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREENFIELD MHP ASSOCIATES, L.P., et al., <br><br> Plaintiffs, <br><br> v. <br><br> AMETEK, INC., et al.,, <br><br> Defendants. | Case No.: 3:15-cv-01525-GPC-AGS <br><br> **ORDER DENYING MOTION TO DISQUALIFY** <br><br> **[ECF No. 130]** |

Before the Court is a motion to disqualify opposing counsel filed by Defendant Ametek, Inc.[1] (ECF No. 130.) Ametek seeks an order disqualifying Baron & Budd P.C. and Gomez Trial Attorneys (collectively, "Plaintiffs' Counsel") as counsel to the plaintiffs in this action and three other related federal lawsuits before this Court: *Trujillo, et al. v. Ametek, et al.* (Case No. 15-cv-1394), *Cox, et al. v. Ametek, Inc. et al.* (Case No. 17-cv-597), and *Cox, et al. v. Ametek, Inc. et al.* (Case No. 17-cv-1211). The motion is fully briefed. For the reasons explained below, the Court DENIES the motion to disqualify. The Court also DENIES Plaintiffs' motion for sanctions.

---

[1] According to the motion, it is also filed by Thomas Deeney, an Ametek officer who is a codefendant in the related cases. Deeney is not a party in this case, but is a defendant in related cases.

1

## I. Background

In this action, Plaintiffs—owners of three mobile home parks located in El Cajon, California—have brought suit claiming damage to their property as a result of ground contamination. Defendants are Ametek, Inc., a former owner and operator of an aircraft parts manufacturing facility near Plaintiffs' properties ("The Facility"), and Senior Operations, LLC, the current owner of the facility. In short, Plaintiffs allege that Ametek, while operating The Facility, constructed an underground waste sump, which eventually leaked and produced a chemical plume contaminating nearby soil and groundwater. This contamination is the origin of five lawsuits, four of which are before this Court, and one of which is in state court.

On May 29, 2015, students and staff from Magnolia Elementary School ("MES")—which abuts The Facility—filed a putative class action in state court against Ametek, Thomas Deeney (an Ametek officer), and Senior. *Trujillo, et al. v. Ametek, Inc., et al.*, No. 15-cv-01395 (S.D. Cal.). The plaintiffs in *Trujillo* allege injury as a result of inhaling toxic vapors while on MES property. The defendants removed the case to federal court. The plaintiffs in *Trujillo* are represented by Baron & Budd, P.C. The case is currently in discovery.

Plaintiffs in this case, owners of three nearby mobile home parks—Greenfield, Villa Cajon, and Starlight—filed suit against Ametek and Senior on July 10, 2015. (ECF No. 1.) This is not a class action. Plaintiffs in this case are represented by Baron & Budd and Gomez Trial Attorneys. Defendants in this case have recently filed a motion for summary judgment. (*See* ECF No. 135.)

On January 25, 2017, three residents of the Greenfield park filed suit in state court against Greenfield's owners. *Rossiter, et al. v. Greenfield MHP, et al.*, No. 37-2017-3143-CU-PO-CTL (Cal. Super. Ct.). According to the electronic state court docket—of which this Court may take judicial notice, *see, e.g.*, *Williams v. Los Angeles Cty. Super. Ct.*, No. CV 08-4823-TJH (MAN), 2009 WL 73732, at *9 (C.D. Cal. Jan. 9, 2009)—it appears that the plaintiffs in *Rossiter* are represented by the Gilleon Law Firm, and the

Greenfield owners are represented by Cooksey Toolen Gage Duffy & Woog.  The defendants in *Rossiter* have filed a third-party complaint against Ametek and Senior.  No one in this case suggests that Baron & Budd or Gomez Trial Attorneys are involved in the *Rossiter* lawsuit.  According to Ametek, the plaintiffs in *Rossiter* claim that the Greenfield owners failed to warn its residents about the plume contaminating the park property.

On March 24, 2017, residents of the three mobile home parks filed a putative class action in this Court against Ametek, Deeney, and Senior.  *Cox, et al. v. Ametek, Inc., et al.*, No. 17-cv-597 (S.D. Cal) (*Cox I*).  In *Cox I*, the plaintiffs allege that they have been injured as a result of inhaling toxic vapors stemming from the contamination of the soil and groundwater at the mobile home parks.  The plaintiffs are represented by Baron & Budd.  On June 20, 2017, the defendants in *Cox I* filed third-party complaints against the mobile home park owners, seeking indemnity as a result of the park owners' alleged failure to warn their residents about the contamination of the park properties.  In October 2017, this Court denied several motions to dismiss the third-party complaints.  (*See* No. 17-cv-597, ECF No. 59.)

Finally, on June 14, 2017, three sons of a deceased resident of the Villa Cajon park filed suit in this Court against Ametek and Deeney.[2]  *Cox, et al. v. Ametek, Inc., et al.*, No. 17-cv-1211 (S.D. Cal.) (*Cox II*).  *Cox II* is not a class action.  There, the plaintiffs claim wrongful death against the defendants, alleging that the contamination in the mobile home parks caused their mother's death.  The *Cox II* plaintiffs are represented by Baron & Budd.

**II.  Legal Standard**

"The disqualification of counsel because of an ethical violation is a discretionary exercise of the trial court's inherent powers."  *Crenshaw v. MONY Life Ins. Co.*, 318 F.

---

[2] The plaintiffs in *Cox II* later amended their complaint to add Senior as a defendant.

Supp. 2d 1015, 1020 (S.D. Cal. 2004). When considering the merits of the claim of a violation of ethical rules, this Court considers California law. *See In re Cty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000). The Court is well aware, however, that a motion for "disqualification is a drastic measure that is disfavored . . . [b]ecause [it is] often tactically motivated." *Crenshaw*, 318 F. Supp.2d at 1020. "Because of this potential for abuse, disqualification motions should be subjected to particularly strict judicial scrutiny." *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (internal quotation marks omitted).

### III. Discussion

Ametek contends that Plaintiffs' Counsel must be disqualified from representing any of the plaintiffs in the four federal lawsuits because there is a concurrent conflict of interest. The mobile home park residents and owners have adverse interests, according to Ametek, because—as suggested by the *Rossiter* state court suit and the defendants' indemnity claims in *Greenfield*—the mobile home park residents have viable claims against the park owners for the owners' alleged failure to warn the residents about the plume's contamination of the park properties.

As explained below, both parties erroneously assume that Ametek must demonstrate Article III standing for the Court to consider the disqualification motion. In light of the totality of the circumstances of this case, however, the Court finds that disqualification is inappropriate.

#### A. Standing

The parties appear to agree that this standing issue is governed by Article III of the United States Constitution. In other words, the parties assume that, to seek disqualification of another party's counsel on the basis of a violation of an applicable ethical rule, a moving party must satisfy the elements of Article III standing with respect to the disqualification sought. The parties disagree as to whether Ametek can demonstrate Article III standing with respect to the alleged conflict of interest at issue here. Ametek argues it has standing to move for disqualification in theses cases because

4

3:15-cv-01525-GPC-AGS

so long as Plaintiffs' Counsel represent the park residents and park owners, there is an ever present threat that whatever final judgment or settlement is reached will be invalidated by an appeal on the ground of Plaintiffs' Counsel's conflict of interest. Plaintiffs respond by arguing that this risk is neither an "actual or imminent" injury, which a party must establish to assert Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The Court, however, need not address this issue because the Court finds that it possesses the power to consider and decide the motion for disqualification by virtue of its inherent power to preserve the integrity of the adversary process.

"Article III of the Constitution limits the judicial power of the United States to the resolution of 'Cases' and 'Controversies,' and Article III standing . . . enforces the Constitution's case-or-controversy requirement." *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 597–98 (2007) (internal quotation marks omitted). This limitation is one of subject-matter jurisdiction, *i.e.*, a court's power to adjudicate a legal dispute and provide appropriate relief. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." (emphasis omitted)); *see also Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 560 (2017) ("A court of competent jurisdiction is a court with the power to adjudicate the case before it. And a court's subject-matter jurisdiction defines its power to hear cases." (citation omitted)). Article III standing limits federal courts' subject-matter jurisdiction to cases in which the party invoking the court's jurisdiction can demonstrate a "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Hein*, 551 U.S. at 598 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). While the doctrine of Article III standing requires a court to consider the relationship between the parties, the doctrine is ultimately a limitation on the court's *power*. *See Allen*, 468 U.S. at 750 ("The Art. III doctrine that requires a litigant to have 'standing' to invoke the *power* of a federal court is perhaps the most important of [the Article III]

doctrines." (emphasis added)).

Considering this nature of the Article III standing doctrine, it makes little sense to apply its requirements to a party seeking disqualification of another party's counsel. This Court possesses an inherent power to disqualify attorneys appearing before it. *See, e.g.*, *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 241 (2d Cir. 2016) ("The authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the adversary process."); *Crenshaw v. MONY Life Ins. Co.*, 318 F. Supp. 2d 1015, 1020 (S.D. Cal. 2004) ("The disqualification of counsel because of an ethical violation is a discretionary exercise of the trial court's inherent powers."); *Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1103 (N.D. Cal. 2003) ("The right to disqualify counsel is within the discretion of the trial court as an exercise of its inherent powers."); *Multimedia Patent Trust v. Apple Inc.*, No. 10-cv-2618-H-CAB, 2011 WL 163928, at *1 (S.D. Cal. Apr. 29, 2011) (same). Notably, that power is one the Court can invoke *sua sponte*. *See, e.g.*, *State Compensation Ins. Fund v. Drobot*, 192 F. Supp. 3d 1080, 1090 (C.D. Cal. 2016) (noting that even if the movant lacked standing to move for disqualification, "[t]he Court would [honor its obligation to manage the conduct of attorneys] by raising the disqualification issue on its own when it found out about the conflict"). The fact that the Court possesses an inherent power to disqualify Plaintiffs' Counsel *sua sponte* requires the conclusion that Article III has conferred that power regardless of how the ethical violation comes to the Court's attention. *See Erickson v. NewMar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996) ("Whenever an allegation is made that an attorney has violated his moral and ethical responsibility . . . [i]t is the duty of the district court to examine the charge, since it is that court which is authorized to supervise the conduct of the members of its bar." (quoting *Gas-A-Tron of Ariz. v. Union Oil Co.*, 534 F.2d 1322 (9th Cir. 1976)).

Put differently, if Article III's standing limitations applied to a disqualification motion, the result would be illogical: a court could disqualify an attorney *sua sponte*, but might not be able to grant a motion to disqualify depending the identity of the movant.

Consider a variation of the situation in this case. Assume Plaintiffs' Counsel is engaging in a blatant ethical violation by, say, selling Plaintiffs' confidential communications to unrelated parties. Further assume that this ethical violation does not affect Ametek's interests. If the Court found out about Plaintiffs' Counsel's misdeeds, it would be the Court's duty to examine the conduct for disqualification of counsel and, as stated above, could do so *sua sponte* pursuant to its inherent authority. But what if Ametek files a motion to disqualify Plaintiffs' Counsel? If Article III standing principles apply, Plaintiffs' Counsel would argue the Court lacks the power to disqualify Plaintiffs' Counsel in response to Ametek's motion. This makes no sense given the Court's inherent power to disqualify Plaintiffs' Counsel.

The Ninth Circuit has only briefly addressed this issue in dicta. In *Kasza v. Browner*, 133 F.3d 1159, 1171 (9th Cir. 1998), the court affirmed the denial of the plaintiff's motion to disqualify defense counsel. While the defendants had not raised the issue of the plaintiff's standing to move for disqualification, the court noted: "We have difficulty seeing how [the plaintiff] has standing to complain about a possible conflict of interest arising out of common representation of defendants in different civil actions, having nothing to do with her own representation. 'As a general rule, courts do not disqualify an attorney on the ground of conflict of interest unless the former client moves for disqualification.'" *Id.* (quoting *United States v. Rogers*, 9 F.3d 1025, 1031 (2d Cir. 1993)). But the court did not rely on this issue in reaching its decision; it instead held that, assuming that plaintiff had standing to move for disqualification, the denial of the motion was not an abuse of discretion. As a result, the discussion in *Kasza* quoted above is non-precedential dicta. *Cetacean Comm. v. Bush*, 386 F.3d 1169, 1173 (9th Cir. 2004) ("A statement is dictum when it is made during the course of delivering a judicial opinion, but . . . is unnecessary to the decision in the case and [is] therefore not precedential." (internal quotation marks omitted)).

The Court acknowledges that its conclusion that Article III standing doctrine does not limit disqualification motions directly conflicts with the decision in *Colyer v. Smith*,

50 F. Supp. 2d 966 (C.D. Cal. 1999), and the courts in this circuit that have relied on *Colyer*'s reasoning.[3] There, after a comprehensive review of case law concerning a non-client party's standing to seek disqualification of another party's counsel, the court determined that the movant must "establish a personal stake in the motion to disqualify sufficient to satisfy the 'irreducible constitutional minimum' of Article III." *Id.* at 971. But the *Colyer* court also acknowledged its own "inherent obligation to manage the conduct of attorneys who appear before it and to ensure the fair administration of justice." *Id.* at 972. As explained above, if a court has the power to disqualify attorneys before it as the result of an ethical violation, it is irrelevant—for purposes of subject-matter jurisdiction—who brings the ethical violation to the Court's attention.

The Court also acknowledges that the Eighth Circuit has adopted an Article III-oriented view with respect to motions to disqualify, though it appears to be the only federal circuit to do so.[4] In *O'Connor v. Jones*, the court rejected the plaintiff's argument that "because he has undisputed standing to bring [the underlying lawsuit], he also has standing to raise by motion any issue that may occur to him in the course of the litigation." 946 F.2d 1395, 1399–1400 (8th Cir. 1991). The court explained that Article III standing applies to both disputes and "particular issues" presented to a federal court. *Id.* at 1400 (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Impliedly holding that a motion for disqualification was a "particular issue" to which Article III standing doctrine governed, the court concluded that the plaintiff lacked standing to bring that motion. *Id.*

---

[3] *See, e.g.*, *Kaufmann v. Pima Cty.*, No. CV 11-534 TUC DCB, 2012 WL 12873766, at *2 (D. Ariz. Sept. 19, 2012); *So v. Land Base, LLC*, No. CV 08-03336 DDP (AGRx), 2010 WL 3075641, at *2 (C.D. Cal. 2010); *Simonca v. Mukasey*, No. CIV S-08-1453 FDC GGH, 2008 WL 5113757, at *3–4 (Nov. 25, 2008); *Xcentric Ventures, LLC v. Stanley*, No. CV-07-00954-PHX-NVW, 2007 WL 2177323, at *2–4 (D. Ariz. July 27, 2007); *Decaview Distrib. Co., Inc. v. Decaview Asia Corp.*, No. C 99-02555 MJJ (ME), 2000 WL 1175583, at *8–10 (N.D. Cal. Aug. 14, 2000).

[4] The Seventh Circuit has relied on *O'Connor* to hold that a plaintiff "does not have standing to disqualify the [defense] attorneys because he cannot show that their representation of the county harmed him in any way." *Dupree v. Hardy*, 859 F.3d 458, 463–64 (7th Cir. 2017); *see also Schneider v. Cty. of Will*, 123 F. App'x 715, 716–17 (7th Cir. 2005). But those cases do not address the issue of whether this standing limitation derives from Article III.

8

As an initial matter, this Court agrees with the *O'Connor* court that the plaintiff's argument went too far. The fact that a complaint satisfies the requirements of subject-matter jurisdiction does not mean that the court possesses jurisdiction to grant every motion filed in that case. For example, if the plaintiff in *O'Connor* sought only damages in his complaint, but then filed a motion for preliminary injunction, the plaintiff would have to establish independent standing to request the injunctive relief. *See, e.g., Davidson v. Kimberly-Clerk Corp.*, 873 F.3d 1103, 1113 (9th Cir. 2017). But rejecting the plaintiff's argument in *O'Connor* does not answer the question of whether Article III *governs* a motion to disqualify, or in the words used by *Warth*, whether such a motion is a "particular issue" pertinent to the limits of Article III standing. Because the Eighth Circuit did not address that issue, the opinion is not of much help. If anything, its discussion supports this Court's conclusion. At the beginning of its discussion, the court states: "[i]n cases where counsel is in violation of professional ethics, the court may act on motion of an aggrieved party *or may act sua sponte to disqualify*." *O'Connor*, 946 F.2d at 1399. That acknowledgement tees up this Court's reasoning above: if the Court can disqualify Plaintiffs' Counsel *sua sponte*, it must also have the power to grant a motion to disqualify, regardless of which party files the motion.

In sum, in the absence of controlling Supreme Court or Ninth Circuit case law stating the contrary, this Court concludes that Article III does not prevent the Court from entertaining and deciding a motion to disqualify counsel. That conclusion, of course, does not require that such a motion be granted.

### B. Whether Disqualification is Appropriate

Having concluded that Article III does not pose a barrier to deciding the instant motion, the Court must consider whether disqualification under these circumstances is appropriate. It is not.

"Disqualification proceedings are equitable in nature. For this reason, courts may properly consider the totality of the circumstances, including whether the motion is being brought in bad faith or otherwise for tactical reasons." *Sherman v. CLP Res., Inc.*, No.

CV 12-8080-GW (PLAx), 2015 WL 13542762, at *7 (C.D. Cal. Feb. 4, 2015) (citations omitted). Because of the potential for abuse, and in light of the drastic nature of an order of disqualification, courts disfavor motions to disqualify. *See, e.g.*, *Reading Int'l, Inc. v. Malulani Grp., Ltd.*, 814 F.3d 1046, 1053 (9th Cir. 2016) ("We are mindful of the drastic nature of disqualification."); *Cty. of Los Angeles*, 223 F.3d at 995 ("A motion to disqualify a law firm can be a powerful litigation tactic to deny an opposing party's counsel of choice."); *Optyl Eyewear Fashion*, 760 F.2d at 1050 ("Because of this potential for abuse, disqualification motions should be subject to particularly strict scrutiny." (internal quotation marks omitted)); *White v. Experian Info. Sols.*, 993 F. Supp. 2d 1154, 1166 (C.D. Cal. 2014) ("[B]ecause motions to disqualify are often tactically motivated, such motions are strongly disfavored and subject to particularly strict judicial scrutiny." (internal quotation marks omitted)); *see also Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 436 (1985) ("[W]e share the Court of Appeals' concern about tactical use of disqualification motions to harass opposing counsel." (internal quotation marks omitted)). "Because a motion to disqualify a party's counsel may implicate several important interests, it is important that judges examine such motions carefully, bearing in mind such considerations as a client's right to chosen counsel, an attorney's interest in representing a client, the financial burden on a client to replace disqualified counsel, and the possibility that tactical abuse underlies the disqualification motion." *Yumul v. Smart Balance, Inc.*, No. CV 10-00927 MMM (AJWx), 2010 WL 4352723, at *3 (C.D. Cal. Oct. 8, 2010) (internal quotation marks and alterations omitted).

Ametek asserts that Plaintiffs' Counsel's representation presents an impermissible concurrent conflict of interest. Under the California ethics rules, "[a] concurrent conflict exists where an attorney represents two or more clients with materially adverse or potentially materially adverse interests at the same time." *Sherman*, 2015 WL 13542762 at *5 (citing Cal. R. Prof'l Conduct 3-310(C))). Based on the pleadings in the four federal cases, there is at least a potential conflict of interest in Plaintiffs' Counsel's simultaneous representation of the mobile home park residents in *Cox I* and the owners in

this case. As alleged in Ametek's third-party complaint in this case, as well as (presumably) in the *Rossiter* action in state court, the residents' interests are adverse to the mobile home park owners to the extent that the residents can claim injury resulting from the owners' failure to warn residents about the contamination on the park properties. *See Walker v. Apple, Inc.*, 209 Cal. Rptr. 3d 319, 1110–11 (Ct. App. 2016) ("An 'adverse' interest is one that is 'hostile, opposed, antagonistic . . . , detrimental, [or] unfavorable' to another's interest." (quoting *Ames v. State Bar*, 506 P.2d 625, 630 (Cal. 1973)).

Nonetheless, considering the totality of the circumstances in this case and the potential for litigation gamesmanship involved, equity in this case counsels against disqualification of Plaintiffs' Counsel. As an initial matter, Plaintiffs are correct that any conflict of interest between the mobile home park residents and the park owners does not impact *Trujillo* and *Cox II*. The plaintiffs in *Trujillo* are suing on the basis of their exposure to toxins while on MES property, which was caused by Ametek. There has been no suggestion that the mobile home park owners also own the MES property. Even assuming the park owners failed to warn the park residents of the toxins on the mobile home park properties, that fact has no relevance to the *Trujillo* plaintiffs' exposure to toxins while on MES property. Ametek responds to this argument by asserting that some of the students at MES live, or lived, in the mobile home parks. Even if that is true, the compensable damages in *Trujillo* are based on exposure at MES only, not the mobile home parks. Similarly, the sole claim in *Cox II*—a wrongful death claim asserted by the sons of a former Villa Cajon mobile home park resident—is irrelevant to the asserted conflict of interest because the decedent in that case passed away before any of the *Greenfield* plaintiffs came into ownership of the Villa Cajon mobile home park. (ECF No. 145-1 at ¶ 15.)

With respect to the conflict arising in Plaintiffs' Counsel's representation of the plaintiffs in *Greenfield* and *Cox I*, the Court finds the most crucial circumstance here to be the fact that all of the plaintiffs in those cases have signed sworn declarations

indicating that they know of the potential conflict, have consulted independent counsel regarding the conflict issue, and still wish to be represented by Plaintiffs' Counsel. (ECF Nos. 145-3, 145-4, 145-5, 145-6, 145-7.) Ametek argues that the declarations are insufficient to protect all of Plaintiffs' Counsel's clients from a conflict because the Court must also consider the interests of the unnamed class members in *Cox I*, who have not consented to representation by Plaintiffs' Counsel. *Cox I*, however, has not reached the class certification stage. Until the class is certified, the unnamed putative class members are not clients of Plaintiffs' Counsel. *See Sherman*, 2015 WL 13542762 at *5 ("In short: unless class counsel forms an independent attorney-client relationship with a putative class member, putative class members are *not clients* before class certification."); *Kullar v. Foot Locker Retail, Inc.*, 121 Cal. Rptr. 3d 353, 356 (Ct. App. 2011) ("[S]ince no class has yet been certified in *Echeverria II* (and no class was ever certified in *Echeverria I*), no attorney-client relationship has yet arisen between [the firm representing the named plaintiffs in those suits] and the members of the putative class."); *Atari, Inc. v. Super. Ct.*, 212 Cal. Rptr. 773, 776 (Ct. App. 1985) ("We cannot accept the suggestion that a potential (but as yet unapproached) class member should be deemed a party represented by counsel even before the class is certified . . ." (internal quotation marks and omissions omitted)). The Court will, of course, consider this potential conflict when addressing a motion to appoint Plaintiffs' Counsel as class counsel in *Cox I*. *See Yumul*, 2010 WL 4352723 at *4 & n.9 (noting that it will consider "unethical conduct by plaintiff's counsel" when the case reaches the classification phase). But for purposes of the instant motion to disqualify, there is no conflict of interest with respect to unnamed members of the putative class in *Cox I*.

While Plaintiffs overstate the evidence of gamesmanship involved in the instant motion to disqualify, the Court cannot ignore the motion's timing. The conflict identified by Ametek has existed since March 2017, when Plaintiffs' Counsel filed the *Cox I* complaint, yet it was not until late November of 2017 that Ametek filed the motion to disqualify. The disqualification motion was also filed six days after the Court denied

Ametek's request to be included in a motion to suspend the case management dates in the this case. (ECF No. 129.) It was also filed eight days prior to the pre-trial motion deadline. After Ametek filed the disqualification motion, it moved for a stay of proceedings. (ECF No. 132.) While these circumstances do not prove that this motion was brought as a delay tactic, the risk clearly exists. Finally, also relevant to this analysis—but not necessarily suggesting gamesmanship by Ametek—is the fact that this case was filed two and a half years ago. Disqualifying Plaintiffs' Counsel at this juncture would cause significant delay in an already aging case.[5]

In light of the clear indication by the clients impacted by the potential conflict of interest that they wish to be represented by Plaintiffs' Counsel, the age of this case, and the risk that this motion was brought as a matter of tactical gamesmanship, the Court finds that the totality of the circumstance weigh against disqualification.

**IV. Motion for Sanctions**

In their opposition memorandum, Plaintiffs assert that the Court should enter sanctions under Federal Rule of Civil Procedure 11 against Ametek because the motion to disqualify has "no legal or factual support," and was brought "to harass or to cause unnecessary delay." (ECF No. 145 at 25.) The Court finds sanctions under these circumstances unwarranted. The motion to disqualify filed by Ametek was far from frivolous: it raised a viable claim that Plaintiffs' Counsel's concurrent representation of the mobile home park residents and owners violates California's rules of professional conduct. While there is evidence suggesting that Ametek's filing of this motion was motivated at least in part by tactical gamesmanship, the Court does not find that Rule 11 sanctions are appropriate under the circumstances.

//

---

[5] Because the Court denies the motion to disqualify on its merits, the Court need not address Plaintiffs' argument that Ametek's counsel failed to satisfy any meet-and-confer requirements before filing the motion. (*See* ECF No. 145 at 7–12.)

## V. Conclusion

For the reasons stated above, Ametek's motion to disqualify Baron & Budd and Gomez Trial Attorneys as counsel for the plaintiffs in this case, as well as *Trujillo*, *Cox I*, and *Cox II*, is DENIED. Plaintiffs' motion for sanctions is also DENIED.

The hearing scheduled for January 26, 2018, is hereby VACATED.

**IT IS SO ORDERED.**

Dated: January 24, 2018

Hon. Gonzalo P. Curiel
United States District Judge